

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-18-2009

# Alan Bagaev v. n

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1718

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Alan Bagaev v. n" (2009). *2009 Decisions.* Paper 1728.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1728

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1718
_____

ALAN BAGAEV,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A98-560-252)
Immigration Judge: Honorable Annie S. Garcy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 18, 2009

Before: SLOVITER, STAPLETON and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: March 18, 2009)
_____

OPINION
_____

PER CURIAM

Alan Bagaev seeks review of a final order of the Board of Immigration Appeals

("BIA") affirming a decision of the Immigration Judge ("IJ") denying his applications for

asylum, withholding of removal, and protection under the Convention Against Torture

("CAT"). For the following reasons, we will deny Bagaev's petition for review.

I.

Bagaev is a Russian citizen of Ossetian ethnicity who lived in the Russian Republic of North Ossetia-Alania. On December 31, 2004, Bagaev entered the United States at Miami International Airport, where he was apprehended and questioned by immigration authorities. He was placed in a detention center, and on January 12, 2005, an asylum officer conducted a credible fear interview. A Russian-language interpreter was present at the interview and an attorney represented Bagaev via telephone.

According to the materials prepared by the asylum officer who conducted the credible fear interview, Bagaev claimed that he was mistreated and threatened by Chechen terrorists because he helped rescue hostages during the 2004 Beslan school hostage tragedy.[1] He alleged that, in October 2004, three masked individuals bearing firearms and driving a black car blocked his automobile and shot at him as he drove away. The interview report states that Bagaev feared that terrorists "targeted [him] for revenge" and tried to kill him because he helped rescue hostages. The asylum officer determined that Bagaev established a credible fear of persecution, and Bagaev was released from

---

[1] On September 1, 2004, Chechen terrorists seized an elementary school in Beslan, North Ossetia-Alania, and took hostage more than one-thousand people. Over the next three days, the terrorists killed many of the hostages. On September 3rd, Russian military and security forces raided the school. The government's assault ended the hostage situation but resulted in the deaths of hundreds of hostages and (apparently) all of the terrorists except for one, who was subsequently tried and convicted.

detention on parole.

On October 28, 2005, Bagaev, represented by a new attorney, filed an application for asylum, withholding of removal, and CAT relief that was supported by a signed declaration. In his signed declaration and at his subsequent merits hearing, Bagaev alleged persecution not by Chechen terrorists but by the Russian and North Ossetian governments due to: (1) his Ossetian nationality; (2) his political activities against the Russian government and the Russian-backed president of the Republic of North Ossetia-Alania; (3) his attempt to resolve the Beslan school crisis through a mediator and to prevent the Russian assault on the school by physically blocking a Russian tank; and (4) his participation in protests and other activities criticizing the manner in which the government handled the hostage crisis.

In an October 26, 2006 written decision, the IJ found Bagaev to be not credible and denied all requested relief. On January 31, 2008, the BIA affirmed the IJ's decision without opinion.

## II.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). Because the BIA affirmed the IJ's decision without opinion, we review the IJ's opinion and scrutinize its reasoning. Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003). We review the IJ's findings of fact under the substantial evidence standard and will uphold the determinations "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft,

3

333 F.3d 463, 471 (3d Cir. 2003) (internal citation omitted). Because Bagaev filed his application for asylum and related relief after May 11, 2005, the REAL ID Act applies to this case. See REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, § 106.

Bagaev first challenges the IJ's adverse credibility determination. Comparing Bagaev's account from the credible fear interview with his subsequent claims of persecution, the IJ concluded that Bagaev's "fundamental story changed over time from fear of [Chechen] terrorists to fear of the Russian government." Bagaev argues that the IJ inappropriately relied on inconsistencies between his credible fear interview, asylum application, and testimony at the hearing. According to Bagaev, his credible fear interview was as unreliable as a typical airport interview, which we have found is not a valid ground upon which to base an adverse credibility determination. See In re Balasubramanrim, 143 F.3d 157, 162-64 (3d Cir. 1998); cf. 8 U.S.C. § 1158(b)(1)(B)(iii).

Bagaev relies on Fiadjoe v. Attorney General, 411 F.3d 135 (3d Cir. 2005), to support his contention that his interview statements should not be used to support an adverse credibility finding. We determined that the particular circumstances in Fiadjoe made irrelevant possible inconsistencies between the petitioner's asylum interview and her subsequent testimony. 411 F.3d at 158-60. Although Bagaev emphasizes that, at the time of his asylum interview, he was in detention and had not previously consulted with his attorney, the circumstances here do not warrant a finding similar to that made in

4

Fiadjoe.[2]  As the IJ recognized, Bagaev's credible fear interview was conducted under oath by a trained asylum officer more than a week after Bagaev's arrival in the United States.  The interview itself was rather extensive, a Russian-language interpreter was used, and Bagaev had the benefit of legal representation.  While Bagaev was understandably nervous, the interview documentation indicates that the asylum officer expressly informed Bagaev that he was going to ask him questions about "why [he] fear[ed] returning to [his] country," and that his answers would not be disclosed to the Russian government barring exceptional circumstances.  The documentation further stated that the asylum officer read a summary of the terrorist-based claim back to Bagaev, who confirmed its accuracy.

Bagaev nonetheless argues that his interview statements regarding the terrorist-based claim of persecution were mistranslated.  His asylum declaration stated that "some of my statements were not properly translated with respect to alleged statements of mine that I believed they were terrorists who took revenge against me for helping women and children in Beslan," and that he actually told the asylum officer that he "had no idea whether they were terrorists or Russian soldiers."  The IJ properly rejected Bagaev's

---

[2]     The result in Fiadjoe was not so much a commentary on the reliability of asylum interviews as it was a recognition that the petitioner's condition and her particular asylum claim made her interview unreliable.  The petitioner in Fiadjoe was diagnosed with severe post traumatic stress disorder, was still in a "state of shock" at her asylum interview, and was faced with revealing the "shameful and taboo incidents of incestuous rape" to a male asylum officer.  411 F.3d at 157-161.

assertion of an "interpreter problem" as "not reasonable." Bagaev testified that he did not request an Ossetian interpreter at the credible fear interview because he understood Russian. Furthermore, the interview documentation states that the "interpreter and applicant confirmed that they understood each other." For these reasons, the IJ properly relied on inconsistencies between Bagaev's asylum interview, application, and testimony to make an adverse credibility finding.[3] See Dia, 353 F.3d at 249 (stating that inconsistent statements may support an adverse credibility finding).

Bagaev also asserts that the IJ erred by concluding that the conditions in Russia and Ossetia were inconsistent with his claim that the Russian government targeted him, and will persecute him if he returns to North Ossetia-Alania, for witnessing and criticizing its management of the Beslan hostage crisis. The record does not compel a conclusion contrary to the IJ's decision on this point. The IJ cited to documents in the record that stated that individuals and organizations have condemned the government's handling of the crisis and that the government has publicly admitted to making mistakes. Bagaev, on the other hand, points to other documents, including a 2004 U.S. State Department report, indicating that journalists have been murdered for criticizing government policies, and that the Russian government controlled the press coverage of

---

[3] To the extent that Bagaev argues that the IJ's reliance on purportedly "minor inconsistencies" was improper, we note that, under the REAL ID Act, an adverse credibility determination may be based on inconsistencies and other factors without regard to whether they go to the heart of the applicant's case. See 8 U.S.C. § 1158(b)(1)(B)(iii).

6

the tragedy and detained a number of journalists.  Although parts of the record support

Bagaev's claim, the IJ's decision regarding country conditions in Russia and North

Ossetia-Alania is supported by substantial evidence.  See Zubeda, 333 F.3d at 471.

For the foregoing reasons, we will deny Bagaev's petition for review.